**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| EMERSON ELECTRIC CO., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:04CV01554 ERW |
| GUY ROGERS AND GUY ROGERS SALES, INC., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendants' Motion for Summary Judgment [doc. #62].

**I.   BACKGROUND FACTS**

Plaintiff Emerson Electric Company ("Plaintiff" or "Emerson") is headquartered in St. Louis, Missouri. One of its divisions sells ceiling fan products and related accessories. Defendant Guy Rogers ("Mr. Rogers") resides in Georgia and is the president of Defendant Guy Rogers Sales, Inc. ("Rogers Sales") (collectively, "Defendants"), a manufacturer's representative business covering Georgia, Alabama, and the Florida panhandle ("the Territory"). Prior to November 2004, Rogers Sales served as Plaintiff's exclusive manufacturer's representative of ceiling fans and accessories in the Territory. Rogers Sales's sales representatives in the Territory consisted of Mr. Rogers, Ellen Lukach, Artie Gaiser, and Kevin Gallman. Pursuant to a Sales Representative Agreement dated January 1, 2000 ("the Agreement"), Rogers Sales was prohibited from competing with Plaintiff's ceiling fan business in the Territory for one year after the Agreement terminated and from using or disclosing Plaintiff's confidential information.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In October 2004, Rogers Sales notified Plaintiff that Rogers Sales was resigning as Plaintiff's representative to become the representative for Minka Aire ceiling fan products in the Territory. Minka Aire's ceiling fan products compete with Plaintiff's ceiling fan products. Rogers Sales's resignation as Plaintiff's sales representative was effective October 31, 2004. On November 9, 2004, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction in the Circuit Court of St. Louis County. After this case was removed to federal court, this Court heard arguments on the Motion and granted Plaintiff's request for a Temporary Restraining Order. On January 14, 2005, the Court entered a Preliminary Injunction prohibiting

> Guy Rogers Sales, Inc.; Guy Rogers; employees of Guy Rogers Sales, Inc. or Guy Rogers; persons contracted by agreements with Guy Rogers Sales, Inc. or Guy Rogers; any person who receives any proceeds or benefits enuring from the sale of ceiling fans by Guy Rogers Sales, Inc., Guy Rogers, or employees or independent contractors thereof; and any entity owned or controlled by Guy Rogers Sales, Inc. or Guy Rogers . . . from engaging in the sale of ceiling fans and related accessories, excluding lighting fixtures, competitive with those manufactured by Emerson Electric Company for a period of one year from November 1, 2004, in the territory of Georgia, Alabama, and the panhandle of Florida.

Jan. 14, 2005 Order at 30. The injunctive relief was affirmed on appeal.[1]

In its Complaint, Plaintiff requests relief on the basis of both a breach of contract claim and a trade secrets misappropriation claim. First, Plaintiff alleges that Defendants have breached certain provisions of the Agreement regarding confidentiality and an agreement not to compete for one year in the Territory. According to Plaintiff, Defendants breached the Agreement by "utilizing, disclosing, keeping, maintaining, and failing to return Emerson's confidential information after their resignation

---

[1]There appears to be some disagreement among the parties as to the current status of Plaintiff's request for injunctive relief, as set forth in Count I of the Complaint. Plaintiff's request for injunctive relief was adjudicated in earlier proceedings before this Court, and this Court's determination as to injunctive relief has been affirmed on appeal. Thus, there are no remaining issues as to Plaintiff's request for injunctive relief, and Count I requires no further adjudication.

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

from Emerson." Compl. ¶ 39. Plaintiff further alleges that Defendants breached the Agreement "by accepting or threatening to accept employment or sales representative positions to promote and sell Minka's ceiling fans and related parts and accessories within the Emerson Territory." Compl. ¶ 40. Finally, Plaintiff alleges that Defendants breached the Agreement "by contacting key Emerson customers with whom Defendants had previously and regularly dealt, and informing such key customers of his threatened employment or sales relationship promoting and selling ceiling fan products for Minka." Compl. ¶ 41. Plaintiff states that it has been damaged as a result of these breaches. Compl. ¶ 42.

Second, with regard to the trade secrets claim, Plaintiff alleges that Defendants "still might have in their possession information and property belonging to Emerson, including confidential customer lists, purchasing histories, trends, catalogs, and price lists." Compl. ¶ 45. Plaintiff further alleges that, "by threatening to promote or sell Minka's ceiling fan products and contacting and soliciting Emerson's customers on behalf of Minka, Defendants have further relied upon, misappropriated, and used Emerson's confidential information." Compl. ¶ 46. Plaintiff alleges that it has been damaged as a result. Compl. ¶ 50.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone*

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**III. DISCUSSION**

Among several other arguments, Defendants contend that summary judgment is warranted as to both the breach of contract claim and the trade secrets claim because, even assuming liability *arguendo*, Plaintiff cannot produce sufficient evidence as to damages regarding either claim.[2] Plaintiff responds that it has been damaged by Defendants' actions and that it has put forth sufficient evidence of its damages as to both claims.

    A.    <u>Elements of the Claims at Issue</u>

To establish a breach of contract, Plaintiff must demonstrate: (1) the existence of an enforceable contract between the parties; (2) mutual obligations arising pursuant to the terms of the contract; (3) that the defendant failed to perform; and (4) that the plaintiff was damaged as a result. *Rice v. West End Motors Co.*, 905 S.W.2d 541, 542 (Mo. Ct. App. 1995). Damages are an essential

---

[2]Defendants' additional arguments include: (1) the request for injunctive relief should be dismissed; (2) Defendants have not taken any action in violation of the Agreement; (3) because all of Defendants' activities were performed in the states of Georgia, Alabama, and Florida, there is no legal or factual basis for bringing a claim under Missouri statutory trade secret law; (4) Plaintiff did not take reasonable steps to protect the confidentiality and secrecy of its alleged trade secrets; (5) Defendants did not misappropriate any of Emerson's trade secrets; (6) Defendants are entitled to summary adjudication of the punitive damages claim; and (7) Mr. Rogers is entitled to summary judgment for separate and independent reasons.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

element and must be proved by the plaintiff. *Id.* To establish a trade secrets misappropriation claim, Plaintiff must demonstrate both that the information alleged to be a trade secret meets the requirements for trade secret protection and that the defendant misappropriated the trade secret. *Lyn-Flex West, Inc. v. Dieckhaus*, 24 S.W.3d 693, 697-99 (Mo. Ct. App. 1999). Further, to recover the monetary damages Plaintiff seeks in its Complaint, Plaintiff must demonstrate that it has been damaged by Defendants' misappropriation. "Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Mo. Rev. Stat. 417.457.1.[3] Thus, Plaintiff is required to prove damages as an essential element of both claims in its Complaint.

    B.    <u>Standards for Proving Damages</u>

Under Missouri law, "anticipated profits may be recovered when 'they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount.'" *Ind. Business Forms, Inc. v. A-M Graphics, Inc.*, 127 F.3d 698, 703 (8th Cir. 1997) (quoting *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo. 1968)).[4] That is, anticipated profits "are recoverable if the plaintiff can prove with reasonable certainty that (1) the defendant's conduct caused some loss of profit; and (2) the extent of the loss." *Refrigeration Ind., Inc. v. Nemmers*, 880 S.W.2d 912, 920 (Mo. Ct. App. 1994). "'[L]oss of profits' refers to the amount of net profits that the plaintiff would have realized in the usual course of business if its clients had not been lost to the competitor as a result of the

---

[3]In addition, actual or threatened misappropriation may be enjoined. *See* Mo. Rev. Stat. § 417.455. In this case, Plaintiff has already sought and obtained injunctive relief. The issue currently before the Court is Plaintiff's request for monetary damages.

[4]In other words, "damages may be recovered for loss of profits due to the breach of a contract if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent." *Budget Rent-a-Car of Missouri, Inc. v. B&G Rent-a-Car, Inc.*, 619 S.W.2d 832, 836 (Mo. Ct. App. 1981) (internal quotation marks omitted).

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

defendant's actions." *Id.* In those cases where the computation of damages is made uncertain by the very nature of the breach itself, the wrongdoer "bear[s] the risk of the uncertainty which his own wrong has created." *Id.* (internal quotation marks omitted). Thus, "[i]f the fact of damage is proved with certainty, the extent or amount may be left to reasonable inference." *Id.* at 837. However, while there may be some element of uncertainty, the uncertainty cannot be to such a degree as to render the testimony speculative. *Coach House of Ward Parkway, Inc. v. Ward Parkway Shops, Inc.*, 471 S.W.2d 464, 471 (Mo. 1971). The fact of damage must be proved with certainty, but "the same degree of certainty is not required with regard to the amount of damages." *Id. See also Refrigeration Ind., Inc.*, 880 S.W.2d at 920 ("While the plaintiff is required to prove with certainty the *fact* of damage, the same degree of certainty is not required with regard to the *amount* of damages."). Importantly, "[d]amages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." *Plas-Chem Corp. v. Solmica, Inc.*, 434 S.W.2d 522, 526 (Mo. 1968) (internal quotation marks omitted).

    C.    <u>Plaintiff's Evidence of Damages</u>

In moving for summary judgment, Defendants contend that Plaintiff cannot produce sufficient evidence as to damages on either their breach of contract or trade secret claim. Thus, Plaintiff, as the non-moving party, must demonstrate that the evidence supporting its damages claims as to both counts is sufficient to enable a jury to return a verdict in its favor. *See Anderson*, 477 U.S. at 249. If Plaintiff fails to produce such evidence, summary judgment is proper. *See Olson*, 943 F.2d at 883. First, with regard to its breach of contract claim, Plaintiff states that the evidence of its damages is that Emerson has experienced a loss in profits since Defendants' resignation, which is demonstrated by: (1) evidence

7

that Plaintiff's own sales decreased in the year following Defendants' resignation, and (2) evidence that Defendants, through their agents, made sales of Minka Aire products in the Territory during the restricted period.[5] Plaintiff points to evidence that, from 2004 until 2005, Plaintiff's sales decreased from $1,065,757 to $596,087, a loss of nearly $470,000. Pl.'s Ex. N and Def.'s Ex. 9.[6] Plaintiff also points to evidence that, from January through November of 2005, a company known as ELS Associates ("ELS") sold approximately $1.5 million dollars in Minka Aire products within the Territory.[7] Pl.'s Ex. O.[8] Ms. Lukach, Ms. Gaiser, and Mr. Gallman sell Minka products through ELS, and ELS is the exclusive representative for Minka Aire in the Territory. Pl.'s Ex. I at 34, 71-72.

---

[5] Plaintiff's contention is that Ms. Lukach, Mr. Gallman, and Ms. Gaiser are Defendants' agents and that they have been selling Minka Aire products in the Territory. *See* Def.'s Ex. 10 at 53.

[6] These two citations to the record are the only evidence Plaintiff provides with regard to this damage theory. Plaintiff's Exhibit N is an excerpt from the deposition testimony of Brian Sponsler, Emerson's vice-president and general manager of the Air Comfort Products division. The excerpt is that portion of Mr. Sponsler's testimony in which he is asked questions regarding a document showing Emerson's seven-year sales history. He states that sales for the Territory went up in 2000, went down in 2001, went down in 2002, went up in 2003, went down about sixteen percent in 2004, and then went down by about forty percent in 2005.

Defendant's Exhibit 9 is entitled "Emerson Ceiling Fans 7 Year Sales History by Rep Agency." The document appears to be the same document Mr. Sponsler was asked about during his deposition. The document indicates that, from 2004 to 2005, sales decreased from $1,065,900 to $596,300. It is unclear why these numbers do not exactly match those numbers cited by Plaintiff in its Memorandum in Opposition. However, the discrepancy is of no consequence.

[7] Though Plaintiff does not so explicitly state, it is presumed that Plaintiff's theory is that, had these sales not been made by ELS, at least some portion, if not all, of these sales opportunities would have come to Plaintiff instead.

[8] This is the only citation to the record Plaintiff provides with regard to this damages theory. Plaintiff's Exhibit O is entitled "Minka Aire Sales Analysis by Salesman." It appears to list 74 sales by ELS of Minka products to various customers throughout Alabama, Florida, and Georgia. In its Memorandum in Opposition, Plaintiff states that these sales total approximately $1.5 million. However, in his deposition testimony, Mr. Sponsler indicates the number is close to $2 million. The basis for this discrepancy is unclear, and it is of no consequence in any event.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Second, with regard to the trade secret claim, Plaintiff again points to evidence that, from January through November of 2005, ELS sold approximately $1.5 million dollars in Minka Aire products within the Territory.[9] Pl.'s Ex. O.

Plaintiff's evidence regarding its damages is insufficient to meet its burden to avoid summary judgment as to both the breach of contract claim and the trade secrets claim because the evidence put forth by Plaintiff in support of its damages fails to provide a sufficient basis from which a damages calculation can be determined with any degree of reasonable certainty. With regard to the evidence that Plaintiff's sales have decreased in the Territory, Plaintiff appears to contend that the entire $470,000 decrease in sales is attributable to unfair competition from Defendants.[10] While the evidence can support a claim that Plaintiff's sales have decreased in the Territory, this evidence alone is far from enough to support a reasonably certain damages calculation. A theory that one hundred percent of the drop in sales is attributable to Defendants' conduct fails to take into account numerous other factors which may have contributed to the decline in sales. For example, the decrease in sales may also have

---

[9] In a trade secret claim, damages "can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing the actual loss." Mo. Rev. Stat. § 417.457. It is presumed that Plaintiff's theory is that, had these sales not been made by ELS, at least some portion, if not all, of these sales opportunities would have come to Plaintiff instead, thereby providing evidence of actual lost profits. It is further presumed that Plaintiff's theory is that ELS was able to make at least some portion, if not all, of these sales by using Plaintiff's trade secret information (e.g., customer lists), thereby providing evidence that Defendants have been unjustly enriched by use of Plaintiff's trade secrets.

[10] The deposition testimony of Mr. Sponsler, provided by Plaintiff as a witness to testify as to Plaintiff's damages, supports the Court's presumption that Plaintiff contends that one hundred percent of the decline in sales is attributable to Defendants' conduct. *See, e.g.*, Def.'s Ex. 10 at 28, 32, and 55.

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

been affected by the closing of customers' stores, including Georgia Lighting;[11] changes in product design or a lack thereof; changes in marketing; a downturn in the economy; or a host of other factors.[12] Moreover, even if Plaintiff is contending that only some portion of this decrease in sales is attributable to Defendants' actions,[13] its evidence is insufficient because a jury would have no basis for determining what portion of the decrease might reasonably be attributable to Defendants' actions. This would force the jury to speculate as to the amount of damages, if any, to which Plaintiff is entitled. In short, Plaintiff provides no basis from which the jury can make a reasonable calculation as to what portion, if any, of the loss of profits is attributable to Defendants' conduct, making its evidence on this point insufficient.

Plaintiff's evidence that, from January through November of 2005, ELS sold approximately $1.5 million in Minka Aire products suffers from the same deficiency. Presumably, Plaintiff wishes to use this evidence to support two theories. First, Plaintiff appears to contend that, had these sales not been made by ELS, at least some portion of the sales, instead, would have been made by Plaintiff, representing the profits that Plaintiff could have earned but for Defendants' actions.[14] However,

---

[11]In prior testimony before this Court, Mr. Rogers stated that Georgia Lighting was one of his two largest accounts. *See* Jan. 14, 2005 Prelim. Inj. at 3.

[12]For example, in his deposition, Mr. Sponsler states that the sale of ceiling fans is affected by a host of variables, including relationships, the economy, the prices charged by Plaintiff and its competitors, and the type of fans being offered by Plaintiff and its competitors. Def.'s Ex. 10 at 54-55.

[13]While Plaintiff appears to contend that one hundred percent of the decline in sales is attributable to Defendants' actions, Plaintiff also appears to concede that the decline may be influenced by other factors. See Def.'s Ex. 10 at 54-55.

[14]From Mr. Sponsler's deposition testimony, it appears that this is Plaintiff's theory. See Def.'s Ex. 10 at 20. Moreover, even if Plaintiff's theory is that Plaintiff would have earned the entire $1.5 million had it not been for Defendants' actions, the theory would fail because it fails to take into account a host of other factors, including the reality that at least some portion of the sales

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff provides no evidence as to the amount of this portion or any other information from which the jury could make a reasonably certain calculation as to the amount of damages.[15] Second, Plaintiff seems to contend that Defendants were unjustly enriched because ELS was able to make at least some portion, if not all, of these sales by using Plaintiff's trade secret information. This theory is likewise without sufficient evidentiary support. Any claim that the entire $1.5 million was earned through the use of Plaintiff's trade secrets fails because such a theory fails to take into account a host of factors, including that at least some portion of the sales by ELS likely were made without the use of Plaintiff's trade secrets and that some customers were pre-existing Minka customers who had never been an Emerson customer and never would have been, in any event. Moreover, any claim that Defendants were unjustly enriched by earning some portion of the $1.5 million through the use of Plaintiff's trade secrets is not supported by sufficient evidence because Plaintiff fails to provide the jury with a basis from which to make a reasonable calculation as to the amount Defendants have been unjustly enriched.[16]

---

opportunities would not have gone to Plaintiff even in the absence of competition from Defendants.

[15] In his deposition, Mr. Sponsler admits that Plaintiff has not calculated what percentage of the Minka sales gain might be due to the alleged wrongful conduct of Defendants. *See* Def.'s Ex. 10 at 21-24.

[16] The cases to which Plaintiff cites do not demand a different result. Plaintiff principally relies upon three Missouri cases, all of which are distinguishable. First, in *Budget Rent-a-Car v. B&G Rent-a-Car*, 619 S.W.2d 832 (Mo. Ct. App. 1981), in considering the issue of whether the plaintiff adequately proved its damages for breach of a noncompetition covenant, the court found that an agreement between the parties provided for an agreed upon method of computing damages in the event of a breach and that the damages award was supported by testimony from the plaintiff's chief managing officer that the plaintiff would have made a certain amount on the improper sales. The circumstances in *Budget*, where the question of competition from other car rental entities was not an issue, made it reasonable to conclude that, but for the breach of the agreement, the total sales would have gone to the plaintiff, making the case distinguishable from the current case.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## IV. CONCLUSION

Defendants, as the moving parties, have pointed to an absence of admissible evidence on an essential element of Plaintiff's breach of contract and trade secret claims. In responding to the Motion, Plaintiff has failed to set forth any admissible evidence as to its damages claims which would "afford[] a sufficient basis for estimating their amount in money with reasonable certainty." *Plas-Chem Corp.*,

---

Second, in *Refrigeration Ind., Inc. v. Nemmers*, 880 S.W.2d 912 (Mo. Ct. App. 1994), the defendant had made sales to customers of the plaintiff in violation of a noncompete agreement. To prove its damages, the plaintiff offered the sales figures as to sales made by the defendant to customers of the plaintiff after he had left the plaintiff's employment and then applied its net profit percentage, yielding an estimation of the amount of profits it could have realized but for the defendant's breach. At trial, the defendant did not object to this evidence, other than a general objection as to lack of foundation. After noting the lack of objection and noting that evidence as to damages need not be certain, the court upheld the sufficiency of the evidence. *Refrigeration Ind., Inc.*, 880 S.W.2d at 920-21. In the present case, Defendants do strongly object to Plaintiff's damages claim, and, unlike the evidence in *Refrigeration*, there is nothing to indicate which sales were diverted by Defendants' activities.

Third, in *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299 (Mo. Ct. App. 1980), the defendant left his employer to start a new business which directly competed with his former employer. The plaintiff presented evidence as to which of its former customers had been appropriated by the defendant and the dollar amounts of its lost profits, which were based on its prior sales with the particular customers. The court upheld the damage award notwithstanding the defendant's claim that the award was speculative. *Orchard Container*, 601 S.W.2d at 305. Unlike the current case, the plaintiff in *Orchard Container* offered evidence as to the particular customers appropriated and based its lost profits on the prior sales activities with those particular customers.

Finally, the other cases cited by Plaintiff are likewise distinguishable. Some are distinguishable because the plaintiff in those cases offered evidence as to the amount of damages from which a jury could make a reasonable damages calculation. *See, e.g.*, *BBserco, Inc. v. Metrix Co.*, 324 F.3d 955 (8th Cir. 2003) (damages award was supported by fact of damage, evidenced by tax returns showing decreased profits, and by amount of damage, evidenced by testimony regarding lost profit calculations based on realistic market conditions); *Coach House of Ward Parkway, Inc. v. Ward Parkway Shops, Inc.*, 471 S.W.2d 464 (Mo. 1971) (trial court excluded certain expert testimony as to damages because it was too remote, speculative, and conjectural; opinion that the plaintiff would have been entitled to a certain percentage of the sales made by an unfairly competing store should have been admitted because clear that a pecuniary loss occurred and precise percentage could not be ascertained with certainty). Other cited cases are distinguishable on their facts. *See, e.g.*, *Indep. Bus. Forms v. A-M Graphics, Inc.*, 127 F.3d 698 (8th Cir. 1997) (trial court should have allowed plaintiff to develop lost profits claim for new business using sister company's profit history).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

434 S.W.2d at 526 (internal quotation marks omitted). Because Plaintiff has failed to set forth evidence as to an essential element of its claim, Defendants are entitled to summary judgment as to Plaintiff's breach of contract and trade secret misappropriation claims. *See Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004) (where moving party can point to absence of evidence satisfying a necessary element of a claim, such as damages, and non-moving party fails to produce such evidence, summary judgment properly entered).[17]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #62] is **GRANTED**. Counts II and III are **DISMISSED**, with prejudice.

**IT IS FURTHER ORDERED** that the February 6, 2006 trial date in this case is **VACATED**. Plaintiff's Motions in Limine [docs. #99, 101, 102, 103, and 104] and Defendants' Motions in Limine [docs. #107, 108, 109, 110, and 119] are **DENIED as moot**.

An appropriate Order of Judgment shall accompany this Order.

Dated this 27th day of January, 2005.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[17]Because this ground alone warrants judgment in favor of Defendants, the Court need not address Defendants' remaining arguments.
In the Complaint, Plaintiff indicates that it is entitled to attorneys' fees and costs in connection with this litigation. In the event Plaintiff intends to pursue such relief, the Court presumes Plaintiff will file an appropriate motion with the Court.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com